WO

MDR

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adam Paul Blomdahl, | No.   CV 22-00094-PHX-MTL (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Sheriff Paul Penzone, et al., | |
| Defendants. | |

Plaintiff Adam Paul Blomdahl, who is confined in a Maricopa County Jail, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 4). The Court will grant the Application to Proceed, order Defendant Cuevas to answer Count Two of the Complaint, order Defendant Chelsea to answer Count Three, and dismiss without prejudice Count One and Defendants Penzone and Munioz.

**I.     Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. *Id.* The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

TERMPSREF

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

### III. Complaint

In his three-count Complaint, Plaintiff sues Defendants Maricopa County Sheriff Paul Penzone, Intake Officer/Sergeant Munioz, Floor Officer Cuevas, and County Health Services (CHS) Nurse Chelsea. In his Request for Relief, Plaintiff seeks monetary damages, injunctive relief, his attorney's fees, his filing fees, and his costs of suit.

In **Count One**, Plaintiff alleges he was subjected to a threat to his safety, in violation of his Fourteenth Amendment rights. Plaintiff contends that on September 10, 2021, he was transferred from the Arizona Department of Corrections to Maricopa County's Watkins Jail. He asserts that while going through the booking process, he requested to file a grievance "due to his current legal/medical claims." Plaintiff claims he "has been requesting injunctive relief[] due to overcrowding in the jail system, and a single man cell as a pro-per classification, by statute and viol[e]nce. Also, as a veteran, Plaintiff has PTSD and ASPD, on a single cell medical housing claim (ADA)."

Plaintiff contends that Defendant Penzone has a policy "that is a custom and practice, to deny Plaintiff[,] as an inmate[,] to file grievances and to complete health screening upon the booking process." He alleges that pursuant to that policy, Defendant Munioz "threatened Plaintiff[']s safety by denying him the ability to file a grievance and complete his health screening." Plaintiff asserts this caused a "serious medical injury by a housing misclass[ification] and excessive force."

Specifically, Plaintiff contends that when he was at intake, he was having an anxiety attack, was "resisting the violent force inte[]grated policy," and requested to speak to a sergeant so he could file a grievance. Plaintiff claims Defendant Munioz told him that inmates cannot file a grievance while in intake and must be transferred to a unit before filing a grievance. Plaintiff asserts he was unable to complete his health screening "because it included a medical claim for a single man cell."

Plaintiff alleges that because of Defendant Penzone's policy and Defendant Munioz's decision to follow that policy by refusing to allow Plaintiff to file a grievance and complete the health screening "med[ical] claim for single man housing and pro-per

1  classification," he was misclassified and, therefore, was subjected to excessive force and
2  serious medical injury.
3      In **Count Two**, Plaintiff claims he was subjected to excessive force, in violation of
4  the Fourteenth Amendment.  He alleges that on September 14, 2021, Defendant Cuevas
5  "used excessive force and violence by assaulting Plaintiff during a misclassification event
6  in the 'CC' 3 hr unit."  Plaintiff contends he was "brutally beaten and pummeled" by
7  Defendant Cuevas and three other officers, which caused him serious injuries, pain and
8  suffering, and emotional distress.
9      Plaintiff alleges he was sound asleep in his cell when Defendant Cuevas violated
10 unit policy by opening Plaintiff's cell door while cursing and threatening Plaintiff.  Plaintiff
11 contends he "got up scared & surprised," was "cornered & trapped," and felt that Defendant
12 Cuevas was going to come into the cell and try to rape him.  Plaintiff claims he "instantly
13 left the cell when [Defendant Cuevas] punched him in the head" and resisted the attack,
14 but surrendered when the other officers arrived a few minutes later.  Plaintiff contends he
15 was then "pummeled, punched/kicked in the head, when [he] was not a threat or fighting
16 at all."  He alleges the officers jumped on his back, picked him up, twist[ed] his wrist," and
17 were "torturing him and throwing him down and jumping on his back again in the hallway"
18 until he blacked out.
19     Plaintiff alleges the excessive force reinjured his back, neck, spine, wrist, and knee.
20 He also claims he suffered a slipped disc/lumbar strain, a dislocated wrist, an exacerbated
21 injury to his arthritic knee, a traumatic brain injury, multiple concussions, blurred vision,
22 cognitive disfunction, headaches, nausea, joint pain, memory loss, brain bleeding, bruising,
23 and extreme suffering and emotional distress.
24     Plaintiff alleges he had been filing grievances regarding the intake policy for three
25 days, but his grievances were ignored and this was "retaliation for this misclassification."
26 Plaintiff also claims the Maricopa County Sheriff's Office "conducted an unfair
27 investigation and lied on reports."
28 . . . .

In **Count Three**, Plaintiff alleges he was subjected to deliberate indifference, in violation of the Fourteenth Amendment, regarding his medical care. Plaintiff asserts after the incident described in Count Two, Defendant Chelsea was "the nurse responding to treat [him]." He claims that after he was "brutally assaulted, punched/kicked in [the] head by officers . . . , blacked out, was forced to wear a spit mask & ha[d] blurry vision," he was "not treated, even though he had obvious bumps, scrapes[,] cuts and bruises, [and] internal & external bleeding." Plaintiff alleges Defendant Chelsea knew of and disregarded an excessive risk to Plaintiff's health and safety by not treating Plaintiff's injuries and, as a result, the injuries worsened and he suffered a traumatic brain injury and cognitive disfunction.

Plaintiff also contends that he was "force[] transfer[r]ed from 3 hr to SMU, slam[m]ed down face first again in the [SMU] cell" and was denied "all basic needs" for almost a week. He claims he asked to see a doctor for x-rays and asked Defendant Chelsea if she could take him to the hospital because he had blacked out; was suffering from a traumatic brain injury, blurry vision, and cognitive disfunction; and thought he had fractures, a slipped disc in his back, a dislocated wrist, and a concussion. Plaintiff alleges Defendant Chelsea denied his requests and would not even remove him from the cell for medical screening. He claims this constitutes deliberate indifference to his medical needs and resulted in the worsening of his conditions. Plaintiff asserts his injuries were not treated; he still suffers from headaches, joint pain, and a traumatic brain injury; and he still has been denied an opportunity to see a provider.

**IV.   Discussion**

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

. . . .

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A. Count One

The requisite elements of a § 1983 claim based on a policy, practice, and custom are that: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001); *see also Edgerly v. City and County of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010). Liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A plaintiff must allege the specific policy or custom and how it violated his constitutional rights. "It is not sufficient for a plaintiff to identify a custom or policy, attributable to the [entity], that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [the jail's] inhabitants.'" *Castro v. County of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

. . . .

Plaintiff appears to be alleging that Defendant Penzone maintains a policy that prohibits inmates from filing grievances while in the intake area, and, instead, requires them to initiate grievances once they have been housed in a cell. Absent any allegation that prisoners are forced to remain in the intake area for an extended period of time, Plaintiff's inability to file grievances while in intake did not deprive him of a constitutional right. And because the policy does not violate Plaintiff's constitutional rights, Defendant Munioz enforcement of it did not violate Plaintiff's constitutional rights. Moreover, Plaintiff's allegations that his inability to file grievances prevented him from completing his health screening and resulted in him being misclassified are vague and conclusory and insufficient to support a claim. Thus, the Court will dismiss without prejudice Count One and Defendants Penzone and Munioz.

### B.     Count Two

#### 1.     Excessive Force

Liberally construed, Plaintiff has stated an excessive force claim against Defendant Cuevas in Count Two. The Court will require Defendant Cuevas to answer the excessive force claim in Count Two.

#### 2.     Retaliation

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claim requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ.*

1  *v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314
2  (9th Cir. 1989).
3        Plaintiff appears to allege that the purported use of excessive force was "retaliation"
4  for his grievances, but this conclusory allegation is insufficient to suggest that his use of
5  the administrative remedy process was a substantial or motivating factor behind Defendant
6  Cuevas's conduct. Thus, the Court will dismiss without prejudice Plaintiff's retaliation
7  claim in Count Two.

      **3.    Investigation and False Reports**

9        Plaintiff's allegation that the Maricopa County Sheriff's Office "conducted an
10 unfair investigation and lied on reports" is vague and conclusory and unrelated to the
11 conduct of any particular Defendant. Thus, the Court will dismiss without prejudice this
12 portion of Count Two.

13     **C.    Count Three**

14       Liberally construed, Plaintiff has stated a medical care claim in Count Three against
15 Defendant Chelsea. The Court will require Defendant Chelsea to answer Count Three.

16 **V.    Warnings**

17     **A.    Release**

18       If Plaintiff is released while this case remains pending, and the filing fee has not
19 been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court
20 that he intends to pay the unpaid balance of his filing fee within 120 days of his release or
21 (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may
22 result in dismissal of this action.

23     **B.    Address Changes**

24       Plaintiff must file and serve a notice of a change of address in accordance with Rule
25 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other
26 relief with a notice of change of address. Failure to comply may result in dismissal of this
27 action.
28 . . . .

**TERMPSREF**

### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed In Forma Pauperis (Doc. 4) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3) Count One is **dismissed** without prejudice.

(4) Defendants Penzone and Munioz are **dismissed** without prejudice.

(5) Defendant Cuevas must answer Count Two and Defendant Chelsea must answer Count Three.

(6) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Cuevas and Chelsea.

(7) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the

filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(10) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

(11) A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(12) The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule

4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13) Defendants Cuevas and Chelsea must answer the relevant portions of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(15) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 28th day of February, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

TERMPSREF