**WO**

KAB

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Adam Paul Blomdahl,

Plaintiff,

v.

Cuevas, et al.,

Defendants.

No. CV-22-00094-PHX-MTL (DMF)

**ORDER**

Plaintiff Adam Paul Blomdahl, who is currently confined in Arizona State Prison Complex-Lewis, brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1.) Defendants move for summary judgment, and Plaintiff opposes.[1]  (Docs. 73, 88.)

## I.     Background

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an excessive force claim against Defendant Cuevas based on Plaintiff's allegations that Cuevas used excessive force on Plaintiff on September 14, 2021, and an unconstitutional medical care claim against Defendant Maestas[2] based on Plaintiff's allegations that

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response.  (Doc. 75.)

[2] This Defendant was named as Defendant "Chelsea" and the Court referred to her as Defendant Chelsea in the Screening Order, but the docket has since been updated to reflect that her name is Chelsie Maestas.

1    Maestas refused Plaintiff medical treatment for injuries Plaintiff allegedly sustained due to
2    Cuevas's use of excessive force.  (Doc. 6.)

3    **II.      Summary Judgment Standard**

4             A court must grant summary judgment "if the movant shows that there is no genuine
5    dispute as to any material fact and the movant is entitled to judgment as a matter of law."
6    Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The
7    movant bears the initial responsibility of presenting the basis for its motion and identifying
8    those portions of the record, together with affidavits, if any, that it believes demonstrate
9    the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

10            If the movant fails to carry its initial burden of production, the nonmovant need not
11   produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099,
12   1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts
13   to the nonmovant to demonstrate the existence of a factual dispute and that the fact in
14   contention is material, i.e., a fact that might affect the outcome of the suit under the
15   governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable
16   jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.
17   242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th
18   Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its
19   favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,
20   it must "come forward with specific facts showing that there is a genuine issue for trial."
21   *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal
22   citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

23            At summary judgment, the judge's function is not to weigh the evidence and
24   determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*,
25   477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw
26   all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited
27   materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).
28   . . . .

### III.   Facts

On September 10, 2021, Plaintiff was transferred from the Arizona Department of Corrections to the Maricopa County Sheriff's Office Watkins Jail.  (Doc. 74 ¶ 2; Doc. 89 ¶ 2.)  Plaintiff was transferred for a restitution hearing on the criminal matter for which he was already convicted and sentenced.  (Doc. 74 ¶ 3; Doc. 89 ¶ 3.)  On September 14, 2021, Defendant Cuevas approached Plaintiff's cell, 4A, 1.33, and opened the door to inform Plaintiff that he was being moved to another housing unit.  (Doc. 74 ¶ 4.)  Plaintiff was notified of the upcoming move an hour before the incident.  (Doc. 74 ¶ 4.)

Defendant Cuevas stood at Plaintiff's cell door, not inside the cell, and calmly spoke with Plaintiff.  (*Id.* ¶ 11.)  Plaintiff did not want to go to another housing unit.  (*Id.* ¶ 12.)  Plaintiff left his cell and immediately became physically threatening, raising his fists and throwing a strike towards Defendant Cuevas's face.  (*Id.* ¶ 13.)  Plaintiff stepped back, and Defendant Cuevas moved forward to obtain control of Plaintiff.  (*Id.* ¶ 14.)  Plaintiff then punched Defendant Cuevas in the head.  (*Id.* ¶ 16.)  It was only after Plaintiff struck Defendant Cuevas that Defendant Cuevas struck Plaintiff in an attempt to stop the assault and gain control of the situation.  (*Id.* ¶ 17.)  Plaintiff continued to fight with Defendant Cuevas as he went down to the ground.  (*Id.* ¶ 18.)

Even when he was on the ground, Plaintiff continued to fight Defendant Cuevas, resisted Cuevas's attempts to subdue Plaintiff, and once Plaintiff saw the responding officers, he turned, grabbed Defendant Cuevas's hand and pulled him to the ground.  (*Id.* ¶ 19.)

Defendant Cuevas had little time to react and gain control of Plaintiff because of the way Plaintiff exited his cell.  (*Id.* ¶ 24.)  Even after Defendant Cuevas had Plaintiff on the ground, Plaintiff continued to punch Defendant Cuevas and attempted to gain control of his head by using his legs in a manner that prevented Defendant Cuevas from having full control.  (*Id.* ¶ 27.)

Plaintiff asserts that he "felt threatened and left the cell, when he was assaulted by Cuevas getting punched in the side of the face/head."  (Doc. 89 ¶ 5.)  The video submitted

of the event confirms Defendants' version of events and shows Plaintiff aggressively bursting out of his cell toward Defendant Cuevas with his fists held in front of him.  The video further reflects Plaintiff punching Defendant Cuevas and Defendant Cuevas punching Plaintiff twice, Plaintiff falling to the ground, and Defendant Cuevas attempting to get Plaintiff under control on the ground, and then using his body weight to subdue Plaintiff until other officers responded.

Additional officers then responded and further neutralized Plaintiff, and then escorted him out of the pod to the Special Management Unit.  (*Id.* ¶ 8.)  Plaintiff asserts that when the other officers arrived, he was compliant, but the officers, including Defendant, continued to kick and punch him.  (Doc. 89 ¶¶ 8-9.)  As a result of his assault on Defendant Cuevas, Plaintiff was charged with Aggravated Assault—Corrections Employee, but the charges were later dropped.  (Doc. 74 ¶ 10; Doc. 89 ¶ 10.)

Once officers safely exited Plaintiff's cell in the Special Management Unit, Defendant Maestas did a cell-side assessment.  (Doc. 74 ¶ 48.)  Witnessing Plaintiff's volatile behavior, she conducted the assessment from outside of the cell.  (*Id.* ¶ 49.)  Maestas witnessed no outward signs of a serious medical need.  (*Id.* ¶ 50.)  Plaintiff asserts that he had "obvious bumps, scrapes, and bruises, internal and external bleeding."  (Doc. 86 ¶ 38.)  Maestas informed Plaintiff that she would not take him out of his cell due to his continuing behavior, but she did schedule a medical visit with a nurse for later that evening.  (Doc. 74 ¶ 51.)[3]  Defendants assert that Plaintiff was seen by a nurse early the next morning on September 15, 2021, approximately nine hours after Defendant Maestas scheduled the visit, but Plaintiff contends he was not seen by a nurse for "weeks."  (*Id.* ¶ 52; Doc. 89-1 at 52.)  Defendants assert that during the visit the next day, Plaintiff was not diagnosed with any injuries as listed in his Complaint.  (Doc. 86 ¶ 53.)

. . . .

. . . .

─────────────────

[3] Defendants produce video of Plaintiff exhibiting aggressive behavior during Maestas's cell front visit.

**IV.     Discussion**

    **A.     Excessive Force**

Defendant Cuevas asserts that he is entitled to summary judgment on Plaintiff's excessive force claim because the video of the incident provides unequivocal proof that Plaintiff was the aggressor, Defendant Cuevas was responding to an emergency situation and an immediate threat to his own personal safety, and when he used force against Plaintiff, he did so in order to maintain control of the unprovoked violent situation.

In Response, Plaintiff asserts that Cuevas entered his cell without any prior warning or notice and threatened Plaintiff and was the "aggressor" because he opened Plaintiff's cell door and initiated contact.

          **1.     Legal Standard**[4]

The Eighth Amendment's safeguard against cruel and unusual punishments prohibits a prison official's "unnecessary and wanton infliction of pain" on a prisoner. *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010); *Hudson v. McMillian*, 503 U.S. 1, 5, 8-9 (1992); *Whitley v. Albers*, 475 U.S. 312, 320– 21 (1986).  Whether a prison official's use of force violates a prisoner's Eighth Amendment rights by "inflict[ing] unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320-21).

In determining whether a prison official's use of force was malicious and sadistic

---

[4] Plaintiff was transferred from the Arizona Department of Corrections for a restitution hearing associated with his criminal conviction for which he was already serving his sentence, and was a sentenced prisoner at the time of the incidents giving rise to this lawsuit.  Accordingly, Plaintiff's claims are analyzed under the Eighth Amendment.  *See, e.g.*, *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."); *cf. Rosenblum v. Blackstone*, No. SA CV 18-966-JVS(E), 2020 WL 1049916, at *10 (C.D. Cal. Jan. 22, 2020) (citing cases discussing whether Fourteenth Amendment or Eighth Amendment should apply to claims regarding jail conditions when person was incarcerated due to ongoing probation violation proceedings).

for the purpose of causing harm, and therefore unconstitutionally excessive, courts consider: (1) the extent of the injury, (2) the need for force, (3) the relationship between the need and the amount of force used, (4) the threat "reasonably perceived" by the officials, and (5) "any efforts made to temper the severity" of the force. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321). When reviewing these factors, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

## 2.    Discussion

The Parties' dispute the extent of Plaintiff's injury. Plaintiff asserts that he suffered bumps, scrapes and bruises, and was actively bleeding. Plaintiff also asserts that he suffered internal bleeding, but there is no evidence supporting this assertion, and Plaintiff is not qualified to testify that he had internal bleeding. Accordingly, Plaintiff suffered some injury.

With regard to the need for force, contrary to Plaintiff's allegations, the video evidence shows that Plaintiff was the aggressor and burst out of his cell with his fists held up toward Defendant. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (a court may properly consider video evidence in ruling on a motion for summary judgment and should view the facts "in the light depicted by the videotape"). Plaintiff's explanation that he was surprised by Defendant coming to his cell door is unavailing both because the video shows Defendant talking to Plaintiff for several minutes prior to Plaintiff bursting from his cell and because Plaintiff's "surprise" would not give him license to threaten a correctional officer with raised fists or to leave his cell without authorization. Defendant reasonably perceived that Plaintiff was a threat both to himself and to institutional security.

Moreover, the video shows that Defendant used force proportional to the threat posed by Plaintiff and once he gained some control of Plaintiff, he used his body weight to keep Plaintiff immobile until other officers could respond. Plaintiff argues that once the

other officers responded, the officers punched and kicked him even though he was no longer a threat, but the video does not reflect that Defendant engaged in any such behavior. Accordingly, the evidence shows that the force used by Defendant was not malicious and sadistic, and Defendant Cuevas is entitled to summary judgment.

### B.    Deliberate Indifference to Serious Medical Needs

Defendant Maestas asserts that she is entitled to summary judgment because she was not deliberately indifferent to any serious medial need.  Defendant Maestas asserts that there is no evidence that she knew or should have known that Plaintiff suffered any alleged injuries or any serious medical need.  Maestas asserts that once officers safely exited Plaintiff's cell, Defendant Maestas did a cell-side assessment due to Plaintiff's volatile behavior, and she witnessed no outward signs of a serious medical need.

In Response, Plaintiff asserts that Maestas did not treat him even though she knew he was bleeding following the incident with Cuevas.

### 1.    Legal Standard

Under the Eighth Amendment, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. First, a prisoner must show a "serious medical need."  *Jett*, 439 F.3d at 1096 (citations omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).  Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096.  An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096.  "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrs.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

### 2.    Discussion

Defendant Maestas produces video of Plaintiff following the assault showing that he would not follow correctional official orders for Plaintiff to get up off the ground.  The

video reflects that some areas of Plaintiff's skin had redness, but it does not show any active bleeding. Video also shows Defendant Maestas examining Plaintiff from outside the room. Although this was not a thorough examination, Plaintiff's failure to follow orders of correctional officials prevented a more thorough examination, and it was not unreasonable for Maestas to conclude the visit once she determined there were no signs Plaintiff was suffering from a serious medical need that required immediate medical attention. Accordingly, the evidence does not show that Maestas knew that Plaintiff had a serious medical need for which she refused to respond. Plaintiff asserts that he did not interact with Maestas after this single occasion and there is no evidence that Maestas was involved in any other care or denial of care to Plaintiff. Accordingly, there is no evidence that Maestas was deliberately indifferent to Plaintiff's serious medical needs and summary judgment will be granted in favor of Defendant Maestas.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 73).

(2)     Defendants' Motion for Summary Judgment (Doc. 73) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 22nd day of May, 2023.

Michael T. Liburdi
United States District Judge